UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

**MARIA DOLORES CANTO MARTI**, as personal representative of the Estates of Dolores Marti Mercade and Fernando Canto Bory,

    Plaintiff,

v.

**IBEROSTAR HOTELES Y APARTAMENTOS S.L.**, a Spanish limited liability company,

    Defendant.
_____/

**JURY DEMAND**

## COMPLAINT

Plaintiff Maria Dolores Canto Marti, as personal representative of the Estates of Dolores Martí Mercadé and Fernando Canto Bory ("**Plaintiff**"), sues Defendant Iberostar Hoteles y Apartamentos S.L. ("**Iberostar**" or "**Defendant**") and alleges as follows:

## INTRODUCTION

1. This is a civil action for damages for Defendant's unlawful trafficking in Plaintiff's property in violation of the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, 22 U.S.C. § 6021, *et seq.* (the "**Act**"), and specifically in violation of Title III of the Act, 22 U.S.C. §§ 6081-6085 ("**Title III**").

1

## PARTIES

2. Plaintiff Maria Dolores Canto Marti ("**Maria Canto**") is a United States citizen and personal representative of the Estates of Fernando Canto Bory and Dolores Martí Mercadé.

3. Plaintiff Maria Canto is also one of Fernando Canto Bory's and Dolores Martí Mercadé's daughters and heirs who has opened both estates in Miami Dade County, Florida on behalf of Fernando Canto Bory's and Dolores Martí Mercadé's heirs.

4. Upon information and belief, Defendant Iberostar is a Spanish limited liability company with registered offices at C/ General Riera, 154, 07010 de Palma de Mallorca, and assigned Tax Identification Number B-28.049.344, recorded in the Business Registry of Mallorca in Volume 1687, Folio 59, Page PM-5191, Registration 1ª.

5. Upon information and belief, Defendant Iberostar, doing business as "Iberostar Hotels and Resorts," operates an international hotel chain and conducts business in Miami-Dade County, Florida through the Iberostar Berkeley Shore Hotel, located at 1610 Collins Ave, Miami Beach, FL, 33139.

6. Upon information and belief, Defendant Iberostar also maintains a corporate office for its business through an affiliate located in Miami-Dade County at 9250 NW 36th Street, Suite 360, Doral, FL, 33178.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this claim arises under the Cuban Liberty and Democratic Solidarity Act (LIBERTAD), 22 U.S.C. § 6021, *et. seq.*, and the amount in controversy exceeds $50,000.00, exclusive of interests, costs, and attorney's fees.

8. This Court has personal jurisdiction over Defendant pursuant to Sections 48.193(1)(a)(1) and (6) of the Florida Statutes.

9. Venue is proper in this judicial District under 28 U.S.C. §1391(c)(2) because the "defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. §1391(c)(2).

## FACTUAL BACKGROUND

### A) *The Confiscated Subject Property*

10. In March 1909, Fernando Canto Granda acquired the real property located at Calle Enramadas, Esq. Santo Tomás, Santiago de Cuba, Cuba, 90200.

11. Thereafter, in or about March 1909, Fernando Canto Granda began developing the building that in 1916 housed a hotel named "El Imperial" that had a restaurant and bar, as well as the La Francia department store, which was owned and operated by Fernando Canto Granda. All property[1] that was located at Calle Enramadas, Esq. Santo Tomás, Santiago de Cuba, Cuba, 90200, and all property of the La Francia retail business is collectively referred to hereinafter as the "**Subject Property**".

12. In 1942, Fernando Canto Granda died intestate in Cuba. At that moment, ownership of the Subject Property passed to his four heirs, two of which died thereafter with no descendents, thereby passing their respective interest in the Subject Property to their two living siblings, Fernando Canto Bory and Rosa Canto Bory, in equal parts, by operation of Cuban law.

13. Therefore, Fernando Canto Bory inherited a one-half interest in the Subject Property.

---

[1] In the Act and hereinafter, "**property**" means "any property (including patents, copyrights, trademarks, and any other form of intellectual property), whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest." 22 U.S.C. § 6023(12)(A).

14. In 1961, with the adoption of a series of Cuban laws published in the Cuban Official Gazette[2], the communist Cuban Government[3] nationalized, expropriated, and seized ownership and control of the Subject Property without authorization by or compensation to the Subject Property rightful owners, thereby confiscating[4] the Subject Property.

15. At such time, Fernando Canto Bory became the owner of a one-half interest in the claim to the confiscated Subject Property.

16. Fernando Canto Bory was a U.S. citizen as of 1972 and later died in San Juan, Puerto Rico in 1992.

17. Upon his death, Fernando Canto Bory's interest in the claim to the Subject Property passed to his wife, Dolores Martí Mercadé, who was also a U.S. citizen as of 1972.

18. Thereafter, Dolores Martí Mercadé died on February 27, 2007.

19. To the extent such interest in the claim to the confiscated Subject Property did not ultimately transfer to Dolores Martí Mercadé, the Estate of Fernando Canto Bory maintains and owns such remainder interest.

---

[2] Laws 851 and 890 authorized the Cuban government to expropriate the property of U.S. nationals as well as Cuban owned industries, businesses, and large corporations including the Subject Property. *See* CUBA, DE DIVULAGCION LEGISLATIVA – LEYES DEL GOBIERNO PROVISIONAL DE LA REVOLUCION XXV 1 A DE OCTUBRE DE 1960, 35, Editorial Lex – La Habana, Noviembre 1960; S*ee also* Rolando Anillo-Badia, *Outstanding Claims to Expropriated Property in Cuba*, ASCE, (Nov. 30, 2011), https://www.ascecuba.org/asce_proceedings/outstanding-claims-to-expropriated-property-in-cuba/.

[3] In the Act and hereinafter, the "Cuban Government" is defined as "any political subdivision of Cuba, any agency or instrumentality of the Government of Cuba." 22 U.S.C. § 6023(5)(A).

[4] In the Act and hereinafter, the term "**confiscated**" refers to:
"(A) the nationalization, expropriation, or other seizure by the Cuban Government of ownership or control of property, on or after January 1, 1959—
(i) without the property having been returned or adequate and effective compensation provided; or
(ii) without the claim to the property having been settled pursuant to an international claims settlement agreement or other mutually accepted settlement procedure; and
(B) the repudiation by the Cuban Government of, the default by the Cuban Government on, or the failure of the Cuban Government to pay, on or after January 1, 1959—
(i) a debt of any enterprise which has been nationalized, expropriated, or otherwise taken by the Cuban Government;
(ii) a debt which is a charge on property nationalized, expropriated, or otherwise taken by the Cuban Government; or
(iii) a debt which was incurred by the Cuban Government in satisfaction or settlement of a confiscated property claim." 22 U.S.C. § 6023(4).

20. To date, the Cuban Government has failed to return the Subject Property to Plaintiff and continues to possess and use the Subject Property without any authorization by or compensation to Plaintiff.

21. Decedent Fernando Canto Bory, decedent Dolores Martí Mercadé, and their heirs never abandoned their legitimate interest in the Subject Property.

22. In accordance with the Act, decedents Fernando Canto Bory and Dolores Martí Mercadé were not eligible to file a claim with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 et seq.) because Fernando Canto Bory and Dolores Martí Mercadé were not U.S. citizens at the time the Subject Property was confiscated.

23. Nonetheless, the value of Plaintiff's claim is well in excess of the Act's $50,000.00 requirement. *See* 22 U.S.C. §6082(b).

24. The claim to the Subject Property has not been settled pursuant to an international claims settlement agreement or other settlement procedure.

25. Upon information and belief, since it confiscated the Subject Property, the Cuban Government has continued to operate and manage a hotel on and using the Subject Property, thereby trafficking[5] in the Subject Property by, including but not limited to, knowingly and intentionally: 1) acquiring, holding an interest in, managing, possessing, obtaining control of, and using the confiscated Subject Property; 2) engaging in commercial activity using and

---

[5] As used in Title III of Act and hereinafter, an entity "'**traffics**' in confiscated property if that person knowingly and intentionally—
(i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
(ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or
(iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person, without the authorization of any United States national who holds a claim to the property." 22 U.S.C. § 6023(Sec. 4)(13).

benefitting from the confiscated Subject Property, in part by entering into commercial arrangements with Iberostar, and other entities, to use and otherwise benefit from the confiscated Subject Property; and 3) causing, directing, participating in, and profiting from its commercial arrangements with Iberostar and other entities to use and benefit from the confiscated Subject Property, without any authorization by or compensation to Plaintiff.

### B) *Defendant's Wrongful Trafficking in the Confiscated Subject Property*

26. Upon information and belief, since at least as early as November 2016 Iberostar has been blatantly trafficking in the confiscated Subject Property.

27. Upon information and belief, beginning approximately November 2016, Iberostar entered into a commercial arrangement with the Cuban Government to co-manage and co-operate the Iberostar Imperial hotel[6], which currently includes the La Francia Restaurant, Parrillada La Joya Snack Bar, Don Fernando Lobby Bar, and El Dorado Roof Garden, all of which sit on and are part of the Subject Property.

28. In co-managing and co-operating the Iberostar Imperial Hotel, Iberostar has been and is currently engaging in commercial activity using and otherwise benefitting from the Subject Property.

29. Such commercial activity and benefits include, but are not limited to: a) generating revenue from leasing rooms in the Iberostar Imperial Hotel to hotel guests; b) marketing and advertising the Iberostar Imperial Hotel and transacting with third parties for the same; c) using the Iberostar Imperial Hotel to market and advertise the "Iberostar" mark and brand; d) entering into numerous commercial agreements with third parties such as the Online Booking Providers (defined and more fully discussed below) to lease Iberostar Imperial Hotel

---

[6] Recently, Defendant changed the marketing of the Iberostar Imperial hotel to the "Iberostar Cubanacan Imperial" and the "Cubanacan Imperial" hotel (collectively hereinafter defined as "**Iberostar Imperial Hotel**").

rooms to hotel guests through the Online Booking Providers' (defined below) respective websites; and e) transacting with the Cuban Government as is required to co-operate and co-manage the Iberostar Imperial Hotel.

30. In addition, since at least as early as November 2016, Iberostar, by co-operating and co-managing the Iberostar Imperial Hotel in conjunction with the Cuban Government and generating revenue therefrom, is causing, directing, participating in, and profiting from the Cuban Government's use of the Subject Property.

31. Iberostar merely added its "Iberostar" mark to the original Imperial hotel name when the hotel reopened its doors as the Iberostar Imperial Hotel in approximately November 2016.

32. Therefore, Iberostar is using and otherwise benefitting from the "Imperial" mark, brand, and the goodwill associated therewith, of the hotel that operated within the Subject Property.

33. Moreover, Iberostar is using and otherwise benefitting from Plaintiff's "La Francia" mark by adopting it as the name of its La Francia restaurant without obtaining authorization or providing compensation to the rightful owners of the Subject Property, including to Plaintiff.

34. In addition, Iberostar named the Iberostar Imperial Hotel lobby bar "Don Fernando Lobby Bar" after decedent Fernando Canto Bory without having obtained decedent Fernando Canto Bory's or Plaintiff's authorization to use decedent Fernando Canto Bory's name—a clear indication of Iberostar intentionally and knowingly engaging in commercial activity using and otherwise benefitting from the Subject Property.

35. Moreover, upon information and belief, as previously mentioned, Iberostar has entered into commercial agreements with a host of corporations that own and operate travel booking websites (the "**Online Booking Providers**"), whereby the Online Booking Providers provide room booking services for the Iberostar Imperial Hotel and market and advertise the Iberostar Imperial Hotel and its features for the Online Booking Providers' own profit and benefit, including in the form of fees and commissions, for the bookings completed on their websites.

36. The Online Booking Providers include, but are not limited to Booking Holdings Inc., which owns and operates the websites booking.com and kayak.com, and Expedia Group, Inc., which owns and operates the website expedia.com, and owns other entities that operate hotels.com, orbitz.com, travelocity.com, trivago.com, and cheaptickets.com.

37. Therefore, the Online Booking Providers have entered into commercial arrangements with Iberostar and/or the Cuban Government at least as early as November 2016 to both use and benefit from the confiscated Subject Property without authorization by or compensation to Plaintiff.

38. As such, the Online Booking Providers have also been causing, furthering, participating in, and profiting from Iberostar's and the Cuban Government's engagement in commercial activity using or otherwise benefitting from the Subject Property.

39. And, in turn, Iberostar has been causing, furthering, participating in, and profiting from the Online Booking Providers' engagement in commercial activity using or otherwise benefitting from the Subject Property.

*C) Defendant's Liability Under the Act*

40. At all times, Defendant has so knowingly and intentionally used the Subject Property without Plaintiff's authorization in violation of Title III of the Act.

41. Plaintiff timely provided Defendant written notice at least thirty days prior to commencing this action of Plaintiff's intent to commence this action with respect to the Subject Property in accordance with 22 U.SC. § 6082(a)(3).[7]

42. Despite Plaintiff's notice, Defendant continues to knowingly and intentionally use and benefit from the Subject Property without authorization by or compensation to Plaintiff.

43. Accordingly, Iberostar has and continues to violate the Act by trafficking in the Subject Property after the enactment of the Act, including after being notified of Plaintiff's intent to commence this action. Plaintiff is therefore entitled to all relief available under the Act, including actual damages, treble damages, prejudgment and post-judgment interest, costs and reasonable attorney's fees, pursuant to 22 U.S.C. § 6082.

## COUNT I – TRAFFICKING IN CONFISCATED PROPERTY
### UNDER 22 U.S.C. § 6082
### Against Iberostar Hoteles y Apartamentos S.L.

44. Plaintiff incorporates by reference paragraphs 1 through 43 as if fully stated herein.

45. This claim is brought pursuant to Title III of the Act, 22 U.S.C. § 6082.

46. Plaintiff is a U.S. national that owns the claim to one-half interest in the Subject Property that was confiscated by the Cuban Government after January 1, 1959.

47. Iberostar is a "person" under the Act, as defined by 22 U.S.C. § 6023(Sec. 4)(11).

---

[7] Plaintiff provided notice and demand letter to Iberostar, as required by 22 U.S.C §6082(a)(3), on June 26, 2019. This complaint was filed more than six months thereafter.

48. Beginning at least on or about November 2016, as alleged above, Iberostar's conduct constitutes trafficking as defined in the Act. And, Iberostar's conduct does not fall under any of the exclusions to the term "traffics" under 22 U.S.C. §6023(Sec. 4)(13)(B).[8]

49. Particularly, Iberostar knowingly and intentionally entered into a commercial arrangement with the Cuban Government whereby it manages and operates the Iberostar Imperial Hotel, which is on and part of the Subject Property, in conjunction with the Cuban Government for revenue and for purposes of increasing its international foothold and brand value, thereby using and benefitting from the Subject Property.

50. Also, upon information and belief, Iberostar entered into a commercial arrangement with the Cuban Government whereby it manages and operates La Francia Restaurant, which is part of the Subject Property, for revenue, thereby further using and benefitting from the Subject Property.

51. Moreover, upon information and belief, Iberostar entered into a commercial arrangement with the Cuban Government whereby it manages and operates the Parrillada La Joya Snack Bar, which is part of the Subject Property, for revenue, thereby further using and benefitting from the Subject Property.

52. And, upon information and belief, Iberostar entered into a commercial arrangement with the Cuban Government whereby it manages and operates the Don Fernando Lobby Bar, which is part of the Subject Property, for revenue, thereby further using and benefitting from the Subject Property.

---

[8] Pursuant to the Act, the term "'traffics' does not include--
(i) the delivery of international telecommunication signals to Cuba;
(ii) the trading or holding of securities publicly traded or held, unless the trading is with or by a person determined by the Secretary of the Treasury to be a specially designated national;
(iii) transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel; or
(iv) transactions and uses of property by a person who is both a citizen of Cuba and a resident of Cuba, and who is not an official of the Cuban Government or the ruling political party in Cuba." 22 U.S.C. §6023(13)(B).

53. Iberostar's use of the "Imperial" hotel name that operated within the Subject Property, Plaintiff's original La Francia department store name as the name of its hotel restaurant, and decedent Fernando Canto Bory's name as part of the name of its Don Fernando Lobby Bar clearly demonstrates Iberostar's knowing and intentional use of the Subject Property.

54. Furthermore, upon information and belief, Iberostar entered into a commercial arrangement with the Cuban Government whereby it manages and operates the El Dorado Roof Garden, which is part of the Subject Property, for revenue, thereby further using and benefitting from the Subject Property.

55. In addition, Iberostar has been trafficking in the Subject Property by, upon information and belief, knowingly and intentionally entering into commercial arrangements with the Online Booking Providers whereby Iberostar benefits and profits from the Online Booking Providers' trafficking in the Subject Property through the Online Booking Providers' provision of online room booking services for and marketing and advertising for the Iberostar Imperial Hotel and its features.

56. Therefore, Iberostar has knowingly and intentionally generated revenues, obtained profits, and realized benefit from its various unlawful uses of the Subject Property.

57. Accordingly, beginning in November 2016 at the latest, Iberostar has been trafficking, as is defined by the Act, in the Subject Property in violation of Title III of the Act through, at a minimum, knowingly and intentionally: (i) managing, possessing, leasing, and using the Subject Property; (ii) engaging in commercial activity using or otherwise benefitting from the Subject Property; and (iii) causing, directing, participating in, and profiting from, trafficking in the Subject Property by another person, including the Cuban Government and the Online Booking Providers.

58. At all times, Iberostar has used the Subject Property without Plaintiff's authorization in violation of Title III of the Act. 22 U.S.C. § 6023(Sec. 4)(13).

59. Iberostar has engaged in such unlawful trafficking since at least as early as November 2016, which is after November 1, 1996, the effective date of the Act.

60. Iberostar was never granted authorization, through federal regulations or otherwise, to engage in any of its uses of the Subject Property.

61. Plaintiff has provided Iberostar with notice of its intent to commence this action in accordance with the requirements of the Act.

62. However, despite Plaintiff's notice to Iberostar of its intent to commence this action, Iberostar continues to traffic in the Subject Property by knowingly and intentionally using and benefitting from the Subject Property as detailed above.

63. Therefore, Plaintiff is entitled to all money damages allowable under 22 U.S.C. § 6082(a), including, but not limited to, those equal to the sum of:

   a) The amount which is the greater of: I) the amount, if any, certified to the claimant by the Foreign Claims Settlement Commission under the International Claims Settlement Act of 1949, plus interest; (II) the amount determined pursuant to 22 U.S.C. § 6083(a)(2), plus interest; or (III) the fair market value of the Subject Property, calculated as being either the current value of the property, or the value of the property when confiscated plus interest, whichever is greater;

   b) Three times the amount determined above (treble damages); and

   c) Court costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff demands judgment against Iberostar Hoteles y Apartamentos S.L., for damages, including treble damages, plus interest, attorneys' fees, court costs, and for such other and further relief as this Court deems just and proper.

## RESERVATION OF RIGHTS

Plaintiff reserves the right to amend the Complaint to add any other appropriate claims as additional facts are obtained through investigation and discovery.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable by a jury.

**DATED** this 8th day of January 2020.

Respectfully submitted,

**Joseph I. Zumpano**
Joseph I. Zumpano (Florida Bar Number: 0056091)
Attorney E-mail address: jzumpano@zplaw.com
Leon N. Patricios (Florida Bar Number: 0012777)
Attorney E-mail address: lpatricios@zplaw.com
Danit Ashkenazi Darmon (Florida Bar Number: 1003836)
Attorney E-mail address: ddarmon@zplaw.com
ZUMPANO PATRICIOS, P.A.
312 Minorca Avenue
Coral Gables, FL 33134
Telephone: (305) 444-5565
Attorneys for Plaintiff Maria Dolores Canto Marti