UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-cv-20078-RNS

**MARIA DOLORES CANTO MARTI**, as personal representative of the Estates of Dolores Marti Mercade and Fernando Canto Bory,

    Plaintiff,

v.

**IBEROSTAR HOTELES Y APARTAMENTOS S.L.**, a Spanish limited liability company,

    Defendant.

_____/

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO LIFT STAY

Plaintiff Maria Dolores Canto Marti, as personal representative of the Estates of Dolores Martí Mercadé and Fernando Canto Bory ("Plaintiff"), hereby files her reply in support of her Motion to Lift Stay [D.E. 21].

### INTRODUCTION

This proceeding should be delayed no further. Defendant has been aware of this dispute since June of 2019, but inexplicably delayed filing its application with the European Commission until April 15, 2020 – some *ten months later*. It has now been over one hundred and twenty (120) days since Defendant submitted its belated application to participate in this litigation to the European Commission. There is no date set for the European Commission to respond. Instead, Plaintiff has been saddled with an indefinite stay in violation of applicable law.

In response to Plaintiff's Motion to Lift Stay, Defendant claims that it is not attempting to avoid this litigation but is instead trying to comply with the laws of several jurisdictions. This is false as Defendant has not committed to participating in this litigation if the European Commission denies its application. Put another way, Defendant has reserved its right to reject this Court's power to adjudicate a claim arising from United States law based on a decision of the European Commission. In doing so, Defendant rejects the supremacy of United States law in the United States courts – a result explicitly rejected by the United States Supreme Court.

1

### I. Defendant is not Entitled to Equitable Relief for their Delay in Seeking Authorization from the European Commission

Defendant is not entitled to the equitable relief of a further stay as it has repeatedly disregarded Plaintiff's numerous communications regarding the filing of this litigation.

**Defendant Ignored the First Communication**

On June 26, 2019, Plaintiff's counsel sent a letter via email and DHL to the president and executive chairman of Grupo Iberostar at miguel.fluxa@grupoiberostar.com and via DHL notifying Defendant of Plaintiff's family's intent to sue if Defendant did not cease and desist its violation of the Helms-Burton Act. [D.E. 12 at ¶¶ 2-3]. Defendant ignored the communication and did not file anything with the European Commission.

**Defendant Ignored the Second Communication**

On January 8, 2020, Plaintiff filed her Complaint. On January 21, 2020, Defendant was served with the Summons and Complaint through local Spanish counsel's use of the Spanish postal service, but Defendant refused to accept the package. [D.E. 9 at ¶ 3 and Exhibit A thereto]. Despite receiving notice of the Complaint filed in this Court, Defendant failed to file anything with the European Commission.

**Defendant Ignored the Third Communication**

On February 13, 2020, Plaintiff again served Defendant. [D.E. 9 at ¶ 4 and Exhibits B and C thereto]. This time service was accomplished through a Spanish public notary who was hired to perform formal service under the laws of Spain. *Id.* Although Defendant refused to accept the package, its refusal did not affect the validity of the public notary's service under the laws of Spain. *Id.* at ¶ 7. After receiving yet another (now the third) communication regarding this case, Defendant still did not file anything with the European Commission.

**Defendant Delayed after Receiving the Fourth Communication**

On March 19, 2020, Plaintiff (now for the fourth time) addressed a communication to the Defendant through service of the Summons and Complaint via DHL. *Id.* at ¶ 10. After receiving the fourth communication, Defendant still did not immediately file anything with the European Commission. Instead, on April 7, 2020, Defendant requested that this Court grant it a three-month enlargement of time through July 8, 2020 to respond to the Complaint. [D.E. 10]. After receiving Plaintiff's objection to such a large extension [D.E. 12], on April 8, 2020, this Court granted Defendant a thirty-day enlargement of time. [D.E. 13]. Only then after this Court rejected a three-

month delay, did Defendant allegedly, on April 15, 2020, file its request with the European Commission.

**Defendant is the Cause of the Delay**

Defendant refuses to acknowledge that it delayed approximately ten months before filing its application with the European Commission. Instead, Defendant has repeatedly argued that the delay is due to the review process of the European Commission and the current global pandemic. In its response to the Motion to Lift Stay, Defendant claims that the European Commission has not given it a date by which the application will be processed, but instead responded that the European Commission's administrative procedure "varies according to the complexity of the case." [D.E. 22 at ¶ 7].

Defendant further argues, without citation to any authority, that permission could not be requested of the European Commission to appear in this litigation until the litigation had commenced. [D.E. 22 at ¶ 24]. Even if this were true (and there is no authority for the proposition that such a statement is true) Defendant ignores that it was served with the summons and complaint in January of 2020 almost *four months* before it filed its application. If procuring permission was as paramount as Defendant would have the Court believe, then authorization should have been sought earlier than April 15, 2020.

The stay should be lifted because the disregard afforded by Defendant with respect to the submission of its application to the European Commission should not be a penalty borne by the Plaintiff or this Court.

### II.     Defendant Refuses to Provide Transparency

This Court granted Defendant's Motion to Stay the Proceedings on April 24, 2020 and ordered Defendant to submit a status report every 30 days. [D.E. 17]. Although Defendant has complied with the Order, it has not made available to the Plaintiff or to the Court its application to the European Commission or any of the alleged subsequent communications with the European Commission.

Defendant should not benefit from its lack of transparency. Defendant argues that it is "doing everything in its power to assist the process, keeping the Commission informed of the need and status in this litigation, and emphasizing to the Commission the importance of its resolution of the Defendant's Application." [D.E. 22 at ¶ 8]. Yet, the application that is so determinative in this matter, as per the Defendant, has only been seen by the Defendant. The communications

3

between the Defendant and the European Commission regarding the application have not been made available to Plaintiff or this Court.  In response to a direct request from Plaintiff, Defendant refused to provide copies of the application, its request for expedited consideration, correspondence between Defendant and the European Commission, and Defendant's request to the Secretariat of State for Commerce of the Kingdom of Spain of the need to timely address the authorization. [D.E. 21-1].  The Status Reports [D.E. 18, 19, 20] and the update in Defendant's Response [D.E. 22 at ¶ 7] are nothing more than the Defendant's characterization of the proceedings before the European Commission.

Defendant's choice to be opaque and to provide snippets of information to Plaintiff and this Court does not warrant the extraordinary relief of a stay of this litigation.  To the contrary, Defendant's delay in filing its application with the European Commission coupled with its lack of transparency regarding the process compel a conclusion that the stay should be lifted.  Importantly, Defendant has not provided this Court with ***any*** precedent in which a United States court granted a stay while one party engaged in a unilateral "confidential" proceeding in another jurisdiction.

### III.     Defendant has Prioritized European Law Over United States Law

The United States Supreme Court has specifically rejected attempts to supersede United States law with foreign law as such an approach would "effectively subject every American court hearing a case involving a national of a contracting state to the internal laws of that state." *Societe Nationale Industrielle Aerospaitale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987).  Defendant argues that it is not seeking to override United States law with the law of another jurisdiction because it is merely "seeking authorization to *comply* with this Court's summons *despite the blocking law*." [D.E. 22 at ¶ 25].   Defendant has it backwards.

In reality, Defendant clearly considers United States law subservient to the laws of a foreign jurisdiction.  Defendant's position is that it is seeking authorization to *comply* with the foreign blocking law *despite* the Helms-Burton Act.  Defendant has therefore prioritized a foreign law over a United States law.  Moreover, Defendant has not committed to participating in this litigation if it does not receive permission from the European Commission. [D.E. 16 at n.8].  Thus, Defendant has only committed to complying with the law of the European Union, not the laws of the United States.

## IV. Staying the Proceeding Violates United States Policy and Prejudices the Plaintiff

Defendant argues that Plaintiff has not identified any United States policy or interest that is being prejudiced by the stay order. [D.E. 22 at ¶ 21]. Nonsense. Title III of Helms-Burton begins with Congress' findings, which include:

- "Individuals enjoy a fundamental right to own and enjoy property which is enshrined in the United States Constitution." *See* 22 U.S.C. § 6081(1).
- "The Cuban Government is offering foreign investors the opportunity to purchase an equity interest in, manage, or enter into joint ventures using property and assets some of which were confiscated from United States nationals." *Id.* at § 6081(5).
- "The international judicial system, as currently structured, lacks fully effective remedies for the wrongful confiscation of property and for unjust enrichment from the use of wrongfully confiscated property by governments and private entities at the expense of the rightful owners of the property." *Id.* at § 6081(8).
- "To deter trafficking in wrongfully confiscated property, United States nationals who were the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures." *Id.* at § 6081(11).

Title III creates a cause of action to pursue against "wrongful confiscation or taking of property" by the Cuban Government. Title III was created, in part, to penalize trafficking in confiscated property because of the financial benefit it provides to the Cuban Government, which ultimately "undermines the foreign policy of the United States." *Id.* *Id.* at § 6081(11). The Eleventh Circuit has explicitly acknowledged the power of Congress to draft laws with extraterritorial effect. *See, e.g., United States v. Plummer*, 221 F.3d 1298, 1301 (11th Cir. 2000).

The EC Blocking Regulation, on the other hand, is designed to thwart the Helms-Burton Act. It is commonly referred to as a "blocking statute" because it was specifically enacted to

counteract or block the effects of the Helms-Burton Act. Commission Delegated Regulation (EU) 2018/1100 (1). Defendant argues that it is required to seek permission from the European Commission to participate in an action brought under the Helms-Burton Act. However, to delay litigation under the Helms-Burton Act to await a decision from a European agency that will have no effect on this Court's application of the Helms-Burton Act undermines United States foreign policy because Defendant may continue trafficking in confiscated property without repercussion in United States courts in contravention of the Helms-Burton Act.

In the meantime, Plaintiff is prejudiced as her property continues to be used in violation of the Helms-Burton Act. She is further prejudiced by Defendant's ability, during this delay, to move assets or otherwise plan to avoid any economic consequences from adverse rulings by this Court.

## V. Defendant Cannot Establish That the Current Stay is Definite

Even though the current stay is, by definition, indefinite as it is tied to the conclusion of another proceeding, Defendant argues that the stay is fully compliant with Eleventh Circuit precedent, which forbids indefinite stays. Defendant fails to distinguish *Trujillo v. Cononver & Co. Communs., Inc.,* 221 F. 3d 1262 (11th Cir. 2000), which is on point and also involved the submission of periodic status reports. In *Trujillo*, the Eleventh Circuit found the stay to be "indefinite in scope" because it appeared "to expire only after a trial of the Bahamian case and the exhaustion of appeals in that case." *Trujillo*, 221 F.3d at 1264. Even though this Court's stay is also dependent on the conclusion of another proceeding, before the European Commission, Defendant argues that *Trujillo* is not applicable because the Bahamian court in *Trujillo* was not progressing quickly. Response at ¶ 33. It matters not whether the European Commission *may* proceed more quickly (and such is mere supposition) than the Bahamian proceeding in *Trujillo* as the apparent speed of another proceeding is not the test. Moreover, even if such were the test, there is no indication that the European Commission's ruling will be a final ruling that cannot be appealed, which would further delay this case.

The Eleventh Circuit found an abuse of discretion, as Defendant concedes at paragraph 32, because the district court stayed the case "pending the resolution of related proceedings in another forum . . . ." *Id*. at 1264. The current stay is in place pending the resolution of another proceeding and is therefore indefinite. Defendant, in fact, has acknowledged that it believes its application is the *first* time, without precedent, that the European Commission is evaluating an application for authorization under the EC Blocking Regulation based on a claim under the Helms-Burton Act.

[D.E. 22 at ¶ 8]. Further, according to Defendant, the European Commission has informed Defendant that, "the procedure requires extensive consultation of both the Commission's services and Member States' authorities." Despite Defendant raising an apparent issue of first impression before a tribunal that "requires extensive consultation," and which has provided no timeline for a decision, Defendant continues to argue that the current stay is not indefinite. The stay is indefinite because it is "until the European Union grants Iberostar's request for authorization." This is a time frame that neither the Defendant nor the European Commission can predict a definite end date.

Moreover, the matter before the European Commission does not involve Plaintiff and will not adjudicate Plaintiff's Helms-Burton Act claims. Thus, it is unlike a circumstance where a parallel proceeding between the same parties regarding the same issues is proceeding, or has proceeded, in another court. *See, e.g. Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518-19 (11th Cir. 1994). For this reason (and also because of the indefinite nature of the stay in this case), Defendant's reliance on *American Manuf. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519 (11th Cir.1984) and *CTI–Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284 (11th Cir.1982) is misplaced. In each of the aforementioned cases, a stay was rejected because, as Defendant concedes: "[i]n the Eleventh Circuit, the critical question for a district court in deciding a stay request is whether the related proceeding is 'likely to have a substantial or controlling effect on the claims and issues in the stayed case.'" *See* Response at ¶ 13 (citing *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir.2009)). Here, like the proceedings in the above referenced cases, the European Commission's decision under a "blocking statute" is also unlikely to control or substantially narrow the claims in this case. Indeed, the European Commission's decision will not address and certainly not control the substantive issues before this Court. As such, there is simply no basis for a stay.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court lift the stay and allow this case to proceed.

Respectfully submitted,

*/s/ Joseph I. Zumpano*
Joseph I. Zumpano (Florida Bar Number: 0056091)
Attorney E-mail address: jzumpano@zplaw.com
Leon N. Patricios (Florida Bar Number: 0012777)
Attorney E-mail address: lpatricios@zplaw.com
Danit Ashkenazi Darmon (Florida Bar Number: 1003836)
Attorney E-mail address: ddarmon@zplaw.com
ZUMPANO PATRICIOS, P.A.
312 Minorca Avenue
Coral Gables, FL 33134
Telephone: (305) 444-5565

Attorneys for Plaintiff Maria Dolores Canto Marti

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 17, 2020, a true and correct copy of the foregoing Motion to Lift Stay was filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all counsel and parties of record.

*/s/ Leon N. Patricios*
Leon N. Patricios