United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Maria Dolores Canto Marti, et al., | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 20-20078-Civ-Scola |
| Iberostar Hoteles y Apartamentos | ) | |
| S.L., and Marcaribe International- | ) | |
| Turismo S.L., Defendants. | | |

## Order on Defendants' Joint Motion to Dismiss

Before the Court is the Defendants' Joint Motion to Dismiss Plaintiffs' Fourth Amended Complaint (**ECF No. 172**). For the reasons that follow, the Court **grants** the motion and **dismisses** the Plaintiffs' Fourth Amended Complaint **without prejudice**.

### 1. Background

This case has a long procedural history. On January 8, 2020, the original plaintiff, Maria Dolores Canto Marti, filed suit against the Defendant, Iberostar Hoteles Y Apartamentos SL, a Spanish company, raising claims under Title III of the Helms-Burton Act, 22 U.S.C. § 6082. (ECF No. 1.) On April 7, 2020, the Plaintiff served Iberostar and on April 23, 2020, Iberostar filed a motion to stay the case on the grounds that European Commission Regulation 2271/96 prohibits Iberostar from responding to the complaint without express authorization from the Commission. (ECF No. 16, at 1-2.) The Court granted the stay on April 24, 2020. (ECF No. 17.) This stay remained in place until December 21, 2022, after the stay was vacated by the Eleventh Circuit. (ECF Nos. 66, 67.)

Since then, additional plaintiffs have been added to the complaint, and the Plaintiffs have also added Marcaribe International-Turismo S.L., a Spanish limited liability company, as a defendant to the case. Additionally, the Defendants have filed various motions to dismiss, and the Plaintiffs have filed three amended complaints. The Plaintiffs have also taken jurisdictional discovery to determine whether the Court has personal jurisdiction over the Defendants.

Here, the Defendants seek to dismiss the Plaintiffs' Fourth Amended Complaint for lack of personal jurisdiction, improper service of process, improper amendment of the complaint, and failure to state a claim.

Because the Court finds that the Plaintiffs have not yet shown that they have adequately served the Defendants with the complaint, the Court dismisses the Fourth Amended Complaint without prejudice.

## 2. Analysis

The Defendants believe that they have not been properly served with the complaint. They argue that because Spain objected to service through the methods discussed in the Hague Convention, including the mail, the Plaintiffs could not serve the Defendants through Spain's Central Authority, Burofax or DHL. (ECF No. 116, at 24-26.)[1] Moreover, the Defendants believe that the Plaintiffs' attempts to serve the complaint are likewise not prescribed by Spanish law and not allowed under Fed. R. Civ. Pro. 4(f)(2)(C)(i)-(ii). (*Id.* at 26-27.) Finally, the Defendants believe that service was improper because it did not include a Spanish translation of the complaint. (*Id.* at 27.)

The Plaintiffs believe that Spain never objected to service by mail. (ECF No. 78, at 15.)[2] They also argue that service by Official Notary and DHL are prescribed by Spanish law and, in any event, the Plaintiffs' attempts to serve the complaint were reasonably calculated to provide the Defendants notice of the lawsuit and are thus satisfactory. (*Id.* at 15-16.)

Under Fed. R. Civ. P. 4(h) (Service of Process Upon Corporations and Associations), service of process outside the United States may be accomplished "in any manner prescribed by Rule 4(f) for servicing an individual, except personal delivery under (f)(2)(c)(i)." Under Fed. R. Civ. P. 4(f), there are three ways, as relevant here, in which a plaintiff may serve a defendant outside the United States:

(1) By any internally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

---

[1] In their motion (ECF No. 172 at 30), the Defendants incorporate their service of process arguments in made in their Motion to Dismiss the Plaintiffs' Third Amended Complaint (ECF No. 116).

[2] In their opposition to the Plaintiffs' Motion (ECF No 174 at 25), the Plaintiffs incorporate their service of process arguments made in their opposition to the Defendants' Motion to Dismiss the Plaintiffs' First Amended Complaint (ECF No. 78).

(2) If there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> (B) as the foreign authority directs in response to a latter rogatory or letter of request; or
> (C) unless prohibited by the foreign country's law, by:
> . . .
> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt;

(3) by other means not prohibited by international agreement, as the court orders.

Thus, if the Hague Convention applies, a plaintiff "must use means of service permitted thereunder," including "submitting a request to the target country's Central Authority or an alternative means if the target country has not objected to that method, including service through diplomatic and consular agents and service by postal mail." *Hind v. FxWinning Ltd.*, 2024 WL 2801521, at *8 (S.D. Fla. May 31, 2024) (citations omitted). The alternative means of service under the Hague Convention are, as described in Article 10, through "postal channels;" "judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination;" and "any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." 20 U.S.T. 362, T.I.A.S. 6638, Art. 10.

Under Article 13 of the Hague Convention, a country's Central Authority "may refuse to comply" with a request for service "if it deems that compliance would infringe its sovereignty or security." 20 U.S.T. 362, T.I.A.S. 6638, Art. 13. A country's Central Authority may also object to the alternative means of service listed in Article 10 discussed above. But when it does so, "that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail or publication." *Hind*, 2024 WL 2801521, at *8 (citation omitted).

Notably, even if a country's Central Authority has objected to service under the Hague Convention, the other subparts of Rule 4(f) "stand[] on equal

footing" with Rule (f)(1). *Id.* (citation omitted); *see also Lexmark Intern., Inc. v. Ink Tech. Printer Supplies, LLC*, 295 F.R.D. 259, 260 (S.D. Ohio 2013). For example, under Rule 4(f)(3), a court "remains free to order alternative means of service where a signatory nation has not expressly objected to those means." *Hind*, 2024 WL 2801521, at *8 (citation omitted). "All that is required is that the proposed service is not prohibited by international agreement and such service comports with Constitutional due process, meaning that is reasonably calculated to provide the defendants notice and an opportunity to defend." *Id.* (cleaned up).

Here, it is undisputed that Spain's Central Authority refused—as was its right—to serve complaints under the Helms-Burton Act because doing so would "threaten the sovereignty of the Kingdom of Spain." (ECF No. 90-4, at 2.) Spain's Central Authority explained that "requests for service based on the Helms-Burton Act issued under Article 3 of the Hague Convention will be rejected by [Spain's] central authority" and "requests by any other means as referenced in the Treaty may be issued to the Spanish central authority so that they may proceed to their rejection and return to the United States central authority." (*Id.* at 2-3.)

The parties disagree on the import of Spain's rejection of any requests for service using the means discussed in the Hague Convention. The Defendants believe that the Spanish Central Authority "specifically confirmed to Iberostar Spain that Spain's objection covered service by mail and such service would be invalid under Spanish law." (ECF No. 116, at 25.) The Plaintiffs, on the other hand, believe that Spain's objection "does not address service by mail." (ECF No. 78, at 15.) The Plaintiffs also point out that Spain in fact allows for service of process by mail, according to the State Department's website. (*Id.* at 15 n. 26 (citing https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Spain.html).)

The Plaintiffs' reliance on the State Department's website is misplaced. The website is not dispositive, as it specifically warns that "the information is provided for general information only and may not be totally accurate in a specific case." *Id.* In this specific case, Spain did reject service by mail when it stated that "requests by any other means as referenced in the Treaty may be issued to the Spanish central authority so that they may proceed to their rejection and return to the United States central authority." (ECF No. 90-5, at 2.) As explained above, the means referenced in the Treat include service by postal channels and Spain's judicial officers, officials, or other competent persons. *See* 20 U.S.T. 362, T.I.A.S. 6638, Art. 10. Spain thus rejected service through those methods. Therefore, the Plaintiffs could not serve Iberostar through Burofax—which is a registered letter sent through the Spanish postal

service—or DHL.[3] Moreover, the Plaintiffs have not shown that the documents served upon the Defendants were translated into Spanish, and many courts have held that translation into the foreign country is required under the Hague Convention. *See Lobo v. Celebrity Cruises, Inc.*, 667 F. Supp. 2d 1334, 1339 (S.D. Fla. 2009) (Gold, J.) (holding the same and collecting cases).

But at the same time, other avenues of service remain open to the Plaintiffs. *See Hind*, 2024 WL 2801521, at *8 ("Where a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail or website posting."); *Karsten Manufacturing Corp. v. Store*, 2018 WL 8060707 (S.D. Fla. July 26, 2019) (Altonaga, J.) ("[T]he Hague Convention does not specifically preclude e-mail and publication service.")

That leaves the Plaintiffs' alleged service through an Official Notary, and whether such service satisfies Rule 4(f)(2)-(3). Service through the Official Notary was insufficient under Rule 4(f)(2)(A) because under Spanish law, notice of a lawsuit must be served by either "[c]ivil servants belonging to the Legal Assistance Service," or the "[p]rocurator for the party requesting" the service." Art. 152(1)(i)-(ii) of the Spanish Civil Procedure Act.[4] A procurator is an official in the Spanish government who "is responsible for practicing procedural acts of notification and carrying out tasks aiding and cooperating with the courts." *Id.* Art. 23(4). The Plaintiffs have not established that the Official Notary they used was a procurator. Even though they attach an affidavit from a Spanish lawyer that states that "Spanish law authorizes Public Notaries to serve legal documents for cases in courts of general jurisdiction," ECF No. 78-2 ¶ 7, the affidavit itself does not cite to any source of Spanish law that contradicts the plain language of the Spanish Civil Procedure Act. The affidavit does say that "pursuant to Article 203 of the 'Reglamento Notarial,' or Notarial Regulations, [the Official Notary] notified Iberostar that due [to] its refusal to accept the documents," proper notification and service were made. *Id.* ¶ 8. However, the Plaintiffs do not provide the Court with the Notarial Regulations or explain how it applies to Spanish service of process. The conclusory statements in the affidavit do not establish that service of process by Official Notary is prescribed by Spanish law as required by Rule 4(f)(2)(A).

The Plaintiffs have likewise not established service of process under Rule(f)(3). *See Hind*, 2024 WL 2801521, at *8 ("A court acting under Rule 4(f)(3)

---

[3] Service through Burofax was likewise insufficient under Rule 4(f)(2)(C)(ii) because the Defendants have not shown that such delivery "require[d] a signed receipt."

[4] The Spanish Government's official translation of the Act can be found at Law 1-2000 of 7 January.pdf (mjusticia.gob.es).

therefore remains free to order alternative means of service where a signatory nation has not expressly objected to those means.") (citation omitted). As long as the proposed method of service is "not prohibited by international agreement and . . . comports with Constitutional due process, meaning that it is reasonably calculated to provide the defendants with notice and an opportunity to defend," the method of service satisfies Rule 4(f)(3). *Id.*

The Court currently does not have enough information to determine whether service through DHL (if it is not considered a postal channel) or an Official Notary "comports with Constitutional due process." *Id.*, at *8. First, The Plaintiffs have not moved for alternative service of process under Rule 4(f)(3). *See id.* at *9. Second, the Plaintiffs have not demonstrated in sufficient detail the steps it took to ensure that the service through DHL was reasonably calculated to provide the Defendants with the complaint. Third, with respect to service through an Official Notary, the Plaintiffs only cite to a conclusory affidavit by a Spanish lawyer, and the Official Notary's communications with Iberostar as an exhibit attached thereto.

Therefore, the Court finds that service of process has not been established. There are methods of service of process available to the Plaintiffs under Rule 4(f)(2), *see id.* at *8-9, but it is incumbent on the Plaintiffs to show that they comport with constitutional due process.

For the reasons stated above, the Court dismisses **without prejudice** the Plaintiffs' Fourth Amended Complaint for insufficient service of process. Because it does so, it will not discuss the remaining arguments set forth in the Defendants' motion to dismiss. *See Joseph v. FCI Miami*, 353 F. App'x 408, 409 (11th Cir. 2009) (explaining that because the plaintiff did not properly serve process, "the district court's discussion of the merits of [the plaintiffs'] claims against [the defendants] was unnecessary"); *Omni Capital Intern., Ltd v. Rudolf Wolf & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

### 3. Conclusion

The Court therefore **grants** the Defendants motion to dismiss without prejudce. (**ECF No. 172**.)

**Done and ordered** at Miami, Florida on October 8, 2024.

Robert N. Scola, Jr.
United States District Judge